IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| HENRY SEBASTIAN ROHDEN, III, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:08-CV-0206 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**
**TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner HENRY SEBASTIAN ROHDEN has filed a petition for a federal writ of

habeas corpus challenging his state conviction and sentence.  For the reasons hereinafter

expressed, the United States Magistrate Judge is of the opinion petitioner's application for

federal habeas corpus relief should be DENIED.

I.
PROCEDURAL HISTORY

On the evening of July 4, 2005, three (3) men were shot with a firearm in the parking lot

of a nightclub at 405 N. Hughes Street in Amarillo, Texas.  One of the men, Rondy Desean

Watson, died as a result of two gunshot wounds to his chest at close range.

On the night of the offense, Thomas Wooten, Jr., who worked security at the night club,

gave police a statement that he heard an individual named "Chad" make a confrontational

remark to an individual named "Frog" and then observed Chad hit Frog in the mouth.  Petitioner acknowledges he is known by the nickname "Frog" and at least one witness identified petitioner as "Frog."  Wooten averred Frog "stepped back and pulled a pistol, possibly a black automatic, from his right pants pocket and shot 5 times at Chad," hitting Chad in the left shoulder area.  Wooten stated Frog and his friend were involved in more fighting in the parking lot when "Frog then shot 3 more times at a range of 5-6 feet at . . . 'Robert Jr.' hitting him in the chest."  Wooten opined that Robert Jr. appeared to be dead from the gunshot wounds.  Wooten averred Frog then ran southbound and was shooting at a third individual, identified as "Little Ronde," whom he believed was also hit in the upper body area.

Ebony Lewis also gave a statement on July 4, 2005 indicating she observed Chad Lewis and Taddius Woods fighting with "Sebastian" when "Frog came up and shot 2 times at Chad Lewis."  Lewis stated "[e]verbody started to run and Frog and Sebastian ran across the parking lot and Rondy and Taddius started to fight Sebastian and Frog shot again and Taddius ran but Rondy was still standing there and Frog shot him in the chest."  Lewis stated that after Frog shot Rondy, he dropped the gun and "Quin picked the gun up and took off running."

Kendrick Wallace also gave a statement on July 4, 2005 wherein he stated he was working the front door of the night club when he heard a shot fired.  Through the back door of the club Wallace observed a male in a black shirt on the ground "being stomped on" by four other men and then "saw sparks and heard a gun shot."  Wallace stated one of the four men pulled back one of their group, a man wearing a yellow jersey, and the man on the ground got up and fired two shots at the man in the yellow jersey at point blank range in the chest.  Wallace observed the man in the yellow jersey fall and another man pull away the man in the black shirt

who had fired the shot.  The shooter and two others then ran from the parking lot and into an

alley.  Wallace did not know any of the men involved in the incident and did not believe he

could identify the shooter.[1]

On July 5, 2005, in Potter County, Texas, petitioner was charged by complaint with

committing the offense of murder on July 4, 2005.  Specifically, it was alleged:

> [T]he victim [Rondy Desean Watson] and two other black males were shot.
> Several witnesses saw the shooting and identified the defendant as "Frog" and at
> least one witness knew his name to be Henry Sebastian.  Another witness who's
> boyfriend, Chad Lewis, was one of the other victims of the shooting, called the
> defendant on the phone and he admitted to her he had shot the victims, included
> the deceased, Mr. Watson.  Mr. Watson was shot in the chest and died . . . a short
> time later.

On July 8, 2005, petitioner was arrested in Miami, Florida.

On July 27, 2005, petitioner gave a written statement to the Amarillo Police Department

stating that he and his brother had been "having problems" with the victim, Chad Lewis and

Taddius Woods for approximately six months.  Petitioner described prior physical and verbal

altercations with the men, an instance where the men had possibly vandalized petitioner's car,

and an instance where gun shots were fired at a house and Lewis accused petitioner of firing the

shots and threatened to do the same to his house.  Petitioner averred the three men harassed him

every time they saw him and that he had heard rumors of the men shooting people.

Petitioner stated that on the night of July 4, 2005, he was at a local night club with his

brother, Sebastian, and another friend, Patrick.  Petitioner advised the victim, Lewis and Woods

were also at the club on the dance floor.  Petitioner stated the three men came over to where he

---

[1]A hand-written statement by Wallace differed from the type-written statement to the extent he stated he observed the man in the yellow jersey hit another man, and that after the other man shot the man in the yellow jersey in the chest at point blank range, that the other man ran "south bound scared."

was and began harassing him so he left the club with Sebastian and Patrick following to find out

what happened.  Petitioner averred he, Sebastian and Patrick were leaving the night club when

his brother's girl friend approached them crying and told petitioner's brother Lewis had touched

her inappropriately.  Sebastian stated he was going back in to the club to confront Lewis.

Petitioner averred he retrieved a gun from the car because he "feared . . . what was going to

happen" and knew the men would shoot either Sebastian, Patrick or petitioner if the men were

carrying guns.

Petitioner averred he, Sebastian and Patrick were by the back door of the club when

Lewis, Woods and the victim came out.  Petitioner stated Lewis and his brother Sebastian got

into a verbal argument and then a physical altercation, and that Woods and the victim joined in.

Petitioner averred he was about to assist his brother when Woods stepped away from the fight

and said, "It's pistol play on mine," and "started reaching for something."  Petitioner averred he

believed Woods was reaching for a firearm so he pulled his gun out and "looked at him."

Petitioner related Lewis then rushed him and he began shooting because he "was scared."

Petitioner stated he then ran from the scene but the victim and Woods gave chase so he began

shooting again.  Petitioner averred he ran through a field with Patrick and, thereafter, found

another acquaintance to give them a ride to another friend's house.  Petitioner stated while en

route, his friend received numerous threatening phone calls.  After arriving at the other friend's

house, petitioner averred he and Patrick obtained a ride to his brother's girlfriend's house where

his brother was waiting.  Petitioner stated he then hid the gun outside and he, Sebastian and

Patrick traveled to Childress for the night and then he took a bus to Miami, at which time he

turned himself in to the police.  Petitioner again averred he was "scared" and "didn't know what

to do," and that he "didn't mean to shoot or kill anybody" and "didn't mean for this to happen."

On December 15, 2005, in Potter County, Texas, petitioner was indicted for the offense of murder. *State v. Rohden*, Cause No. 51,950-B. Petitioner was alleged to have intentionally and knowingly caused the death of Rondy Watson, on July 4, 2005, "by shooting him with a firearm." On May 14, 2007, petitioner entered a plea of guilty to the charge of murder in exchange for the prosecution's recommendation that petitioner receive a 20-year sentence. The trial court accepted petitioner's plea and assessed petitioner's punishment at twenty years imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division, and a $10,000 fine. Corresponding judgments were signed and filed of record on May 15, 2007. Petitioner did not timely appeal his conviction and sentence to the appropriate state appellate court.

On April 21, 2008, petitioner, acting pro se, filed a state application for a writ of habeas corpus challenging the constitutionality of his conviction and sentence on the following ground:

> Petitioner was denied effective assistance of trial counsel because counsel failed to interview eye witnesses who would have provided testimony supporting petitioner's claim that he shot the victim in self defense.

On June 25, 2008, the Court of Criminal Appeals interpreted petitioner's claim as an allegation that his trial counsel rendered ineffective assistance of counsel because counsel did not interview Thomas Wooten, Jr., Ebony Lewis, and Kendrick Wallace. The Court found petitioner argued these witnesses would have testified that petitioner shot the victim in self defense. The Court, finding petitioner had alleged facts that, if true, might entitle him to relief, directed the trial court to make findings of fact as to whether the performance of petitioner's trial counsel was deficient and, if so, whether counsel's deficient performance prejudiced petitioner. *Ex parte Rohden*, No.

70,059-01.

On September 2, 2008, petitioner's trial counsel executed an affidavit addressing the

claims raised by petitioner in his state habeas petition.  Counsel averred he "conducted extensive

interviews with [petitioner] concerning the factual basis of the case," had "access to all police

reports, witness statements, criminal history information, and evidentiary and background

information," and reviewed this information "in detail with [petitioner] and with [the appointed

investigator] on numerous occasions."  Counsel summarized the case as:

> [A] shooting incident in which [petitioner] had armed himself with a .380 caliber
> semi-automatic pistol and fired numerous gunshots toward three (3) different
> victims at a late-night altercation that had broken out in the parking lot of a
> nightclub in Potter County, Texas.  [Petitioner] had not been directly involved in
> the physical altercation in the parking lot, but he had retrieved the .380 caliber
> pistol from a car just prior to the altercation.  Numerous witnesses saw
> [petitioner] firing several gunshots at these victims at close range.  Specifically,
> our investigation revealed at least nine (9) or more witnesses who all saw
> [petitioner] firing numerous gunshots at the three victims at close range.  Each of
> these three victims suffered at least one gunshot would as a result of these shots
> fired by [petitioner].  However, according to these witnesses, when [petitioner]
> fired the gun at the murder victim (Rondy Watson), he fired at point blank range
> into this victim and his bullet struck the victim in the chest.  A subsequent
> autopsy showed that this bullet actually entered the victim's chest area and struck
> the blood vessels surrounding his heart and, therefore, produced a mandatorily
> fatal wound.

> The defense investigation also revealed that [petitioner] had voluntarily,
> knowingly, and intelligently given a written confession to law enforcement
> officers after his arrest and this confession clearly inculpated [petitioner] in the
> instant crime as the perpetrator.  Even worse, the police later obtained a statement
> from a friend of [petitioner], Marcus Hardy.  [Petitioner] went to Mr. Hardy's
> house after the shooting and Mr. Hardy stated that he heard [petitioner] say, "I
> killed those niggers."  Also, [petitioner] pulled a .380 caliber pistol from his pants
> and laid it on a table in Mr. Hardy's house.  [Petitioner] also told Amber
> Richardson "I shot them niggers," as indicated in her statement to the police.  The
> defense investigator and I discussed the facts and circumstances surrounding this
> oral confession as well as the written confession with [petitioner] and his family.
> We further explained the devastating impact that these confessions would have on
> the defense case as a whole.  During our extensive interviews with [petitioner], he

was reluctant to talk to us about the case, but he did provide several different versions of what happened and none of his versions supported a self-defense claim.

Counsel stated research of the law pertaining to the use of deadly force in self-defense and in defense of third persons, as well as the investigation of the facts of this case, including interviews with many witnesses, revealed a self-defense claim was not viable in this case. Counsel averred he explained the law to petitioner and why the facts did not justify his use of deadly force because, *viz.*:  none of the victims were armed or used deadly force against petitioner, and because there was no evidence that a reasonable person would not have retreated prior to using deadly force.  Counsel opined the facts could not reasonably support a self-defense claim.

Counsel also explained each of the witnesses identified by petitioner had given statements that were not helpful to the defense, why the witnesses would not have changed the outcome of the trial, and why additional statements were not obtained from the two of the three witnesses.  Specifically, counsel noted Wooten could not accurately identify the actors nor the roles they played, Wallace could not be located, and the interview of Lewis incriminated petitioner and did not provide any evidence of self defense.  Counsel also cited numerous other witnesses interviewed would have incriminated petitioner and not provided any evidence of self defense.  Counsel also averred he fully informed petitioner of his options and all the possible consequences prior to his accepting the plea bargain offer of a 20-year sentence.

On August 9, 2008, the trial court entered the following findings of fact:

1.      Trial counsel reviewed the statement Thomas Wooten, Jr. gave to law enforcement and determined (a) Wooten could not accurately identify the true actors in the crime and could not specify the role each played; and (b) Wooten's statement was very incriminating to petitioner because he was

clear that petitioner shot numerous times at the victims at close range. Therefore, counsel did not seek any further statements from Wooten.

2.      Counsel reviewed the statement Kendrick Tywayne Wallace gave to law enforcement officer and determined Wallace gave a very confused and inaccurate statement but did state the shooter fired two shots at the victim at point blank range in the chest.  Trial counsel's court appointed investigator made repeated attempts to locate Wallace, but was unsuccessful, thus, trial counsel was unable to interview Wallace;

3.      Counsel interviewed Ebony Lewis and determined Lewis (a) incriminated petitioner, (b) could not provide any evidence of self defense, (c) would have helped the State's case and severely hurt the defense case.  Lewis stated petitioner started firing a gun, aimed at the head of Chad Lewis, fired a shot, and then fired again, before crossing the parking lot and firing at least two shots at the victim.  Lewis told counsel petitioner should "do some time" for killing the victim.

4.      Counsel located and interviewed numerous eye witnesses to the crime and determined (a) there were at least nine or more witnesses prepared to testify they saw petitioner fire numerous shots at the victims at close range, and (b) there was not any evidence of deadly force being used against petitioner;

5.      Counsel's affidavit established petitioner's contention that Thomas Wooten, Jr., Ebony Lewis and/or Kendrick Wallace would have testified petitioner shot the victim in self defense is without merit;

6.      Counsel did not coerce or improperly influence petitioner to accept the State's plea bargain agreement and enter a plea of guilty; and

7.      Counsel's performance was not deficient.

The state trial court concluded petitioner's trial attorney rendered effective assistance of counsel and petitioner's contention that counsel rendered ineffective assistance of counsel was without merit.

On November 5, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas applications without written order on the findings of the trial court without a hearing.

On November 17, 2008, petitioner filed with this Court the instant federal habeas corpus

petition.  On February 4, 2009, respondent filed an answer opposing petitioner's request for federal habeas corpus relief.  On February 26, 2009, petitioner executed an affidavit in response to the affidavit of trial counsel submitted during state habeas proceedings.  On March 2, 2009, petitioner filed a reply to respondent's answer.[2]

## II.
## PETITIONER'S CLAIMS

Petitioner claims his conviction is in violation of the United States Constitution because his guilty plea to the charges was involuntary.  Specifically, petitioner claims his guilty plea  was the result of the ineffective assistance of counsel because trial counsel failed to investigate or discover exculpatory evidence when he failed to:

1.  Interview petitioner regarding the facts of the offense;

2.  Investigate and interview Thomas Whooten Jr.;

3.  Investigate and interview Eboney Lewis; and

4.  Investigate and interview Kendrick Tywayne Wallace.

## III.
## EXHAUSTION OF STATE COURT REMEDIES

In his answer to this petition, respondent does not contend petitioner did not sufficiently exhaust his available state court remedies as required by 28 U.S.C. § 2254.  The undersigned Magistrate Judge has reviewed petitioner's state court records and it appears petitioner has

---

[2]On February 26, 2009, petitioner executed and submitted to this Court an affidavit wherein he responded to trial counsel's affidavit.  As this Court sits solely in review of the state courts' decisions at the time they were made, review is limited to the record that was before the state courts that adjudicated the claims on the merits, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  As petitioner's affidavit was not part of the record in existence at the time of the state courts' decisions, it has no evidentiary value in this federal habeas corpus proceeding.

presented, to the highest court of the State of Texas, the substance of these claims he now

presents to this federal court.

IV.
<u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody

under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated

on the merits in state court proceedings unless that person first shows the prior adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established federal law, as determined by the
        Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of
        the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the United States Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has on a

set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see*

*also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  A

state court decision will be an unreasonable application of clearly established precedent if it

correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the

case.  *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir.

2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

A decision adjudicated on the merits in a state court and based on a factual determination

will not be overturned on factual grounds unless it is objectively unreasonable in light of the

evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003).  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  *Hill*, 210 F.3d at 485.  When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption.  *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (the Fifth Circuit recognizes this Texas state writ jurisprudence).

Petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence on the grounds that he was denied effective assistance of trial counsel because counsel failed to conduct a proper pretrial investigation to reveal mitigating evidence and defensive issues.  The Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without a hearing.  *Ex parte Rohden*, App. No. WR-70,059-01.  The ruling of the Texas Court of Criminal Appeals on these grounds constituted an adjudication of petitioner's state habeas corpus claims on the merits.[3]  *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999); *cf. Ex parte Thomas*, 953 S.W.2d 286 (Tex.Crim.App. 1997); *Ex parte Torres,* 943 S.W.2d 469 (Tex.Crim.App. 1997) (under Texas law a denial by the Court of Criminal Appeals signifies the court addressed and rejected the merits of the claims).  Therefore, the deferential standard set forth in 28 U.S.C. § 2254(d) is applicable to this case and must be demonstrated by petitioner.  Consequently, this Court's

---

[3]The term "adjudication on the merits" in 28 U.S.C. § 2254(d) addresses whether the state court's disposition of the claim at issue was procedural or substantive.  *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir.2002) ( *en banc* ).  Nothing in this case suggests the Texas Court of Criminal Appeals disposed of petitioner's claims on a procedural basis.  *See Barrientes v. Johnson,* 221 F.3d 741, 778-80 (5th Cir.2000), *cert. dismissed,* 531 U.S. 1134 (2001) (setting forth analysis to determine whether state court adjudication was merits-based).  The state court denial qualifies as a full and fair review of the grounds raised therein.  This Court must treat the state court's "denial" – based on the findings of the trial court – as a merits adjudication of petitioner's state habeas application.  *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

review is limited to a determination of (1) whether petitioner has shown the state court's determination that petitioner's claims were without merit was based on an unreasonable determination of the facts in light of the evidence before the state court, or (2) whether petitioner has shown the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

V.
MERITS

A.  Waiver of Claims

Respondent initially argues petitioner's ineffective assistance of counsel claims are waived because he entered a knowing and voluntary guilty plea.  If petitioner, fully aware of the alleged deficiencies in the representation provided to him by trial counsel, nonetheless chose to enter a plea of guilty notwithstanding his dissatisfaction with his representation, then such claims may very well have been waived.  Petitioner, however, appears to contend he would not have pled guilty if counsel had more thoroughly investigated his case.  As petitioner appears to claim the ineffectiveness of counsel directly related to the voluntary nature of his guilty plea, such claims may arguably survive the entry of the guilty plea itself.  Due to this possible allegation that his ineffective assistance of counsel claim directly affected the validity of the guilty plea itself, and since the Court finds petitioner's claims do not entitle him to federal habeas corpus relief, the Court does not reach this issue or make a determination that petitioner's ineffective assistance of counsel claims were waived by his guilty plea.

B.  <u>Burden of Proof</u>

Respondent argues that even if this Court hears petitioner's claims, petitioner has not met his burden of proof in order to obtain federal habeas corpus relief under the AEDPA. Respondent maintains petitioner simply reasserts the same claims he made in his state habeas application and makes no effort to demonstrate the level of error required by the AEDPA, thus, petitioner is not entitled to relief.

The undersigned agrees.  The state trial court analyzed petitioner's claims of ineffective assistance of counsel and, considering the sworn affidavit of petitioner's trial counsel, determined petitioner's contention that Wooten, Ebony Lewis and Wallace would have testified petitioner shot the victim in self-defense was without merit.  During his state habeas proceeding, petitioner did not present an affidavit refuting trial counsel's affidavit.  The Texas Court of Criminal Appeals, based on the findings of the state trial court, determined petitioner was not entitled to state habeas corpus relief.  Petitioner has not demonstrated the state court's determination that petitioner's claims were without merit was based on an unreasonable determination of the facts in light of the evidence before the state court.  Petitioner does not refer to any Supreme Court opinion containing a "materially indistinguishable" set of facts that controls this case.  Nor has petitioner shown the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  In fact, petitioner does not argue the state habeas courts arrived at a conclusion opposite to one reached by the Supreme Court on a question of law. Petitioner is not entitled to federal habeas corpus relief and his petition should be denied.

C.  Ineffective Assistance of Counsel Claims

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but must also show the deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness."  *Id.* at 668, 104 S.Ct. at 2064.  However, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066).  To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong.  *Id.* at 697, 104 S.Ct. at 2069.

The Sixth Amendment requires counsel "to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary."  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690-91.  Even strategic choices made after a less than complete investigation are "reasonable" to the extent that reasonable professional judgments support the limitations on investigation.

In determining the reasonableness of an attorney's investigation, this court must directly assess a particular decision not to investigate "for reasonableness in all the circumstances,

applying a heavy measure of deference to counsel's judgments." *Id.* The court must also consider not only the evidence already known to counsel, but whether such evidence would lead reasonable counsel to investigate further. *Wiggins v. Smith,* 123 S.Ct. 2527, 2538 (2003). The reasonableness of an investigation depends in large part on the information supplied by the defendant. *See Ransom*, 126 F.3d at 123. Counsel should, at a minimum, interview potential witnesses and independently investigate the facts and circumstances of the case. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Even so, counsel is not required to investigate everyone mentioned by the defendant." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985).

## 1.  Failure to Interview Petitioner

In his first ground, petitioner alleges trial counsel was ineffective for failing to interview petitioner regarding the charged offense. Petitioner alleges that had trial counsel interviewed petitioner as to the crime charged counsel would have learned:

1.   Petitioner had problems with the victim and his friends prior to the date of the fatal shooting;

2.   The victim's friend, Chad Lewis, had threatened to "shoot up" petitioner's home prior to the date of the fatal shooting;

3.   The victim and his friends tried to fight petitioner every time they saw him after petitioner reported Lewis's threat to the police;

4.   During the altercation on July 4, 2005, the victim's friend, Taddius Woods, "backed up and made a verbal threat" toward petitioner by saying, "It's pistol play on mine," and had then reached for something petitioner believed to be a pistol and petitioner pulled his weapon in response;

5.   After Woods's statement and motion, Chad Lewis "rushed" petitioner and petitioner began shooting;

6.   After petitioner shot at Lewis, he "began to run away" but the victim and Woods "began chasing him so he started shooting again."

Petitioner appears to argue that after interviewing petitioner and learning petitioner's version of the events, counsel would not have advised petitioner to plead guilty to the charge of murder but, instead, would have advised petitioner to go to trial and argue self-defense.  Implicit in petitioner's argument is that his claim of self-defense would have been successful before a jury or would have resulted in a lesser sentence.

Trial counsel must make a reasonable investigation of a defendant's case or if he determines a particular investigation is unnecessary, such decision must be reasonable.  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  Whether counsel's investigation was reasonable depends, in part, on the information supplied by the defendant.  *Id*.  A federal habeas petition who alleges inadequate investigation must show what additional investigation would have uncovered and how his defense would have benefitted from such additional investigation. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993).

In his unrefuted affidavit submitted during state habeas proceedings, trial counsel averred he did, in fact, have extensive interviews with petitioner "concerning the factual basis of the case alleged against him in the indictment."  Counsel stated he discussed the facts and circumstances surrounding petitioner's oral and written confessions, and the devastating impact of the confessions on the defense case as a whole, with both petitioner and petitioner's family.  In his affidavit, trial counsel thoroughly explained why the facts did not support a claim of self defense and why he did not believe it was in petitioner's best interest to pursue a defense of self defense. Trial counsel's affidavit reflects counsel had a thorough understanding of petitioner's version of the facts as well as the multiple witness versions of the events.  Trial counsel also exhibited an understanding of the relevant law as it related to self defense, deadly force in defense of a

person, and defense of a third person, as well as how the versions of the facts, including

petitioner's version, did not support a valid claim of self defense under the law.

Since the state court records show petitioner was, in fact, interviewed by counsel, any

claim that counsel failed to speak to petitioner is baseless.  Further, petitioner has not shown how

failure to conduct additional interviews between himself and counsel or the investigator

constituted deficient performance on the part of counsel or prejudiced petitioner's defense.  Nor

has petitioner shown counsel was deficient in failing to further investigate the line of self defense

or that petitioner was prejudiced by counsel's failure to further investigate this theory.

Specifically, petitioner has not provided any evidence establishing the facts of this case met the

requisites necessary to show he validly acted in self defense and was justified in using deadly

force.  Petitioner has not overcome the strong presumption that counsel's representation of

petitioner was adequate and has not demonstrated he is entitled to federal habeas corpus relief on

this claim.


## 2.  <u>Other Witnesses</u>

Petitioner also argues counsel was deficient in failing to further investigate and interview

Thomas Wooten Jr., Ebony Lewis, and Kendrick Tywayne Wallace beyond their statements to

the police on the night of the murder.  Petitioner contends further pretrial interviews with

Wooten would have revealed (1) Wooten observed Chad Lewis punch a man identified as

"Frog" in the mouth; and (2) "Frog" pulled his gun and began shooting after this physical action

on the part of Lewis.  Petitioner contends additional interviews with Wooten would have shown

petitioner pulled out the firearm and shot at Lewis "in order to defend himself," and that

Wooten's version of the events would have supported petitioner's statement that he fired "only

after Chad Lewis had punched him, and because he was scared."

Petitioner contends that had trial counsel interviewed Ebony Lewis, counsel would have learned the witness observed (1) petitioner and his brother run across the parking lot after petitioner shot Chad Lewis; (2) that Rondy Watson and Taddius Woods followed petitioner and his brother; and (3) that upon catching up with petitioner and his brother, Watson and Woods began fighting with petitioner's brother.  Petitioner contends this additional evidence, which counsel could have gleaned from an interview with Ebony Lewis, would have supported his own statement that after he shot Chad Lewis, he ran away from Watson and Woods, that they gave chase, and that "he started shooting again because he was scared, and did not mean to kill anyone."

Petitioner contends that had trial counsel interviewed Kendrick Wallace, counsel would have learned the witness observed (1) petitioner "being stomped on" by four males; (2) that while petitioner was still on the ground, a gun went off; (3) that the men pulled Rondy Watson, the victim, back from the altercation; and (4) that petitioner got up off the ground and fired two shots at Watson, the victim, at point blank range in the chest.  Petitioner contends an interview with Wallace would have established Watson was the initial aggressor, that petitioner was being assaulted by multiple assailants, and that the act of "pulling Watson back" demonstrated Watson's intent to "do great bodily harm to the petitioner."  Petitioner concludes an interview with Wallace would have shown he was defending himself against an unlawful attack by the victim and three other men, "rendering his mind incapable of cool reflection."

Petitioner appears to argue that if trial counsel had interviewed Wooten, Lewis and Wallace, it would have changed the outcome of the proceedings because additional statements

from the witnesses pursuant to the interview would have demonstrated petitioner acted in self-defense and/or did not have the requisite intent to murder the victim.  Petitioner contends interviews with the witnesses would have shown petitioner's act of running after shooting Chad Lewis was an attempt to "abandon the encounter," and would have "clearly communicated" to the victim, Rondy Watson, that petitioner was scared, and demonstrated petitioner was not "trying to kill anyone."  Petitioner concludes if counsel had interviewed the witnesses, his claim of self defense would have been established or there would have been evidence to support a lesser charge of involuntary manslaughter.  Petitioner also appears to argue the failure to interview the witnesses before advising petitioner to plea guilty rendered petitioner's guilty plea involuntary because it was not knowing or intelligent.

The undersigned initially notes trial counsel did, according to his affidavit submitted during state habeas proceedings, interview Ebony Lewis, finding any testimony from Lewis incriminated petitioner, did not provide any evidence of self defense, and would have helped the State's case and severely hurt the defense case with her testimony.  Counsel or his investigator made a reasonable investigation with regard to witness Lewis, and made a reasonable evaluation of her statements and what her purported testimony would be if the case went to trial.  Petitioner has not demonstrated trial counsel's performance was constitutionally deficient.

In his affidavit submitted during state habeas proceedings, counsel averred he  attempted, but was unable, to locate Kendrick Wallace for an interview.  Therefore, no further interview of Wallace was conducted by counsel or his investigator.  Counsel opined, however, that Wallace's statement to the police, although "very confused and inaccurate" as to specifics, was clear that Wallace observed the shooter fire "two (2) shots at a victim at point blank range in the chest."

Although unable to find Wallace for an interview, it appears counsel made a reasonable investigation with regard to this witness and made a reasonable evaluation of his statements and what his purported testimony would be if the case went to trial.  Again, petitioner has not demonstrated trial counsel's performance was constitutionally deficient.

Counsel averred he did not seek an interview with Wooten because in his statement to the police, it was clear he could not accurately identify the actors in the altercation or specify the roles each played.  Counsel opined, however, that Wooten's statement was very incriminating to petitioner because he was clear that petitioner shot numerous times at the victims at close range.  It appears counsel made a reasonable investigation with regard to this witness based on a reasonable evaluation of his statements and what his purported testimony would be if the case went to trial.  Again, petitioner has not demonstrated trial counsel's performance was constitutionally deficient.

Moreover, it is clear that all of the information petitioner believes could have been gleaned from interviews with the witnesses was already available to trial counsel through the statements the witnesses made to the police.  Petitioner has not identified any _new_ information beneficial to his case which would have been elicited by interviewing the witnesses.  Nor has petitioner shown how any such new information would have supported a claim of self defense or overcome the statements of "at least nine (9) or more witnesses who were prepared to testify that they saw [petitioner] fire numerous gunshots at the victims at close range."  Similarly, petitioner has not opined how any additional information from interviewing these witnesses would have alleviated the impact of his confession to the police after his arrest or his inculpatory statements and actions made immediately following the shooting.  Petitioner has not shown he was

prejudiced by any failure of trial counsel to interview Wooten or Wallace.

Further, as noted in paragraph V.B. above, by rejecting his claims of ineffective assistance of counsel on state habeas review, the state courts necessarily found counsel's performance was not deficient and/or that petitioner was not prejudiced by counsel's performance. Petitioner has not demonstrated the state courts' decision that petitioner was not denied effective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner has not met this threshold standard of review for federal habeas corpus relief, nor has he demonstrated the merits of his ineffective assistance of counsel claims for failure to conduct further investigation  would otherwise entitle him to federal habeas corpus relief. Consequently, even if this Court disagreed with the state court determinations, petitioner has not demonstrated he is entitled to federal habeas relief by showing the state court decisions were both incorrect and objectively unreasonable. Petitioner's claims should be denied.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petitions for writs of habeas corpus filed by petitioner HENRY SEBASTIAN ROHDEN III be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of December, 2011.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).